Mr. Simon for Petitioner DirectSat USA LLC, Mr. Salter for the Respondent, and Mr. Carter, Petitioner DirectTV LLC. Good morning. Good morning, your honors. May it please the court. My name is Eric Simon. I represent DirectSat Appellant in this case. Today, we ask the court to reverse the decision of the NLRB, which directed DirectSat to provide what was called the Home Service Provider Agreement that it had with DirectTV. These names get confusing and hard to pronounce sometimes. The board's theory directed DirectSat to provide the entire document as opposed to a particular piece of it because the board concluded that our proposal regarding the definition of bargaining union work in some manner encompassed the entire HSP agreement. We respectfully submit the board's decision and order is arbitrary and capricious and unsupported by substantial evidence in the record. Now, the inquiry here is whether it's relevant, right? That's a very low standard, isn't it? It's a low standard, but there is a standard, and it's not a non-existent standard, particularly when it comes to information that is not presumptively relevant. So what was the nature of the proposal that DSAT made in the collective bargaining negotiation? I was doing the negotiations, so I can speak a little bit from memory on this. We were arguing with the union over the definition of bargaining unit work and how to define telecommunications, how to define satellite TV, and where it goes from there. And that was important because the AT&T merger, right? Well, this is happening well before the AT&T merger. That kind of comes back in about a year and a half. About a year was six months later, excuse me. So initially we were just arguing, what's the definition of unit work? And we made a proposal to the union that says that everybody agreed that installation and service of satellite television services was per se bargaining unit work. The real issue was what services that DSAT may do down the road would also come within the ambit of bargaining unit work. And to develop a reference point for that, we said anything other than what we provide pursuant to the HSP agreement would not be deemed bargaining unit work. That's the context of the proposal. In all fairness, the union then made a request for the entire document, for the HSP agreement, and we provided three pages from the document that specifically addressed the definition of the work that DSAT provided to DirecTV. Page one said DSAT was engaged. Yeah, but once you choose to define the scope of the work by reference to this agreement, why isn't the agreement relevant? Again, we're just talking about relevance here. Right, but what was relevant is those provisions of the agreement that defined the work. For example, price points in the agreement, what DirecTV paid for DirecSAT, are clearly not relevant to bargaining unit work. Provisions that define dispute resolution procedures have nothing to do with bargaining unit work. What was the union's argument about that? Well, the fact is the union never made an argument about it. All the union did throughout the course of negotiations was assert we want the full HSP agreement because of your proposal. They never went into any detail as what else they think they want to see out of it. In fact, they didn't even go so far as what the board did to say, well, we want it because we need to see the relevant provisions in the context of everything else. The interesting part through two other points. So we provided the three pages, which in themselves said, here's the relevant provisions. It said the unit work is defined in Exhibit 1A2, 1A1, within geographic areas in 1A2, all of which we provided. It's everything else that we refused to provide. At some point, actually in March of 2016, the union made its own proposal, which in fact referenced the HSP agreement. Now, it seemed to us at that point, it was an acknowledgement by the union that it had everything it needed. It made its own proposal referencing the work described in the HSP agreement. The board argues that, well, that doesn't mean anything. They just try to move the process along. But it assumes that the union made a proposal that it itself did not understand, which makes no sense at all. Finally, when we get to May of 2016, when the union changed its theory entirely, in May 19th of 2016, it asks for the full HSP agreement and mentions not one iota about the definition of bargaining unit work. Now, the union says it wants the agreement because it wants to assess the level of control that DirecTV slash AT&T has over DirecSat. And it was clear that they wanted to see that information to assess whether there was a joint employer relationship under the then board standards, under the Browning-Ferris decision. And, in fact, in support of that, we refer your honors to the joint appendix, in which the union's statement of position to the regional director in support of its ULP sent the letter. And it specifically said it wanted the HSP agreement to assess the joint employee relationship or even more strained to determine whether the DSAT bargaining unit should be accreted to a bargaining unit that Local 21 had with AT&T. There was no reference at all in the union's position that it needed the information at this point in time because of the bargaining unit issue. They had said that before, though, right? No. Well, they said it first in their letter of May. I'm just saying it's corroborated to say this is what the real game that was afoot was to establish the joint employer relationship, certainly by May. And that's the predicate for the ULP. Can I just ask one clarifying question, which is, for purposes of your petition for review before us, we're not assuming there's confidential information, right? Because the board's order with respect to yours notes that there's no claim being made that there was confidential information. We did not assert confidentiality for the simple reason that if you assert confidentiality, you're required to negotiate with the union over an accommodation to figure out how to provide it. And we're saying they're not entitled to it at all. And we agree that there is confidential information. Right. But that wasn't our theory. That wasn't what we argued. Your Honor, to your question about the standard, it's a liberal standard. But the board has said, with respect to non-presumptively relevant information, that the union has an obligation to articulate with some precision why it wants the information and why the information is relevant. And a generalized conclusion is not sufficient. And that's in the board's decision in Disneyland Park. In this case, what seems to be the way you set it up, the tension then is whether we agree with you that this is presumptively non-relevant or whether we start with a different assumption that it's because you all brought it up, it's presumptively relevant. Except even in the board's decision, in the board's decision, there's a quote in it that says, the union was entitled to see it because it needed to evaluate in the context of the relevant portions, which is what we provided, within the document as a whole. Implicit in that statement is that an acknowledgment that we provided the relevant information. I thought you said the context of the relevant information. Right. So this basically said you provided the relevant information, but for the union to really evaluate it, they needed to see the whole thing. And our argument is that there is no evidence in the record at all that they had a need to see the whole thing. My time is up. Seconds rebuttal. Thank you, unless there are any other questions. Okay. Thank you. Good morning, Your Honors. May it please the Court. Greg Sautter for the National Relations Board. Your Honor, the board decision simply holds here that a party is entitled to know the full context of a contract before it signs it. The full content, I'm sorry, of a contract before it signs it. In this case, as was discussed earlier, there is a proposal that refers to the HSP without singling out any particular provisions or any specific contents within that. And the union asked from the very beginning to see the HSP because of that generalized reference to it  As to a point that Mr. Simon made, when the union made its own counterproposal, the union was not just acquiescing to having the full HSP in there because afterwards it once again asked for the full HSP, again, because of the reference to it in the new product line's proposal. So this was not an abdication of the union's argument or request to see the document. With regards to relevance, Your Honor, it's true that these third-party contracts are, under board law, not presumptively relevant, so the board needs to meet a small, minimal threshold that all courts and the board have held as a very light burden to meet. In this case, the board found that the union met that threshold simply because of the proposal itself. And the union said, as I don't want to repeat myself 50 times, but we want to see that document because it is referenced in the proposal. And the union basically found itself before what could become a Russian doll contract, if you will, where you have one collective bargaining agreement and another one that's just inserted in there. And that was enough for the board to find that the relevance standard had been met. Can I ask a question? So if the new products line proposal didn't refer to the HSP as a whole, but it just said something like, in the event the employers engage with respect to products and services other than those pursuant to those provisions of the Home Service Agreement that bear on bargaining unit work. So it itself presupposed that there's only some provisions that bear on bargaining unit work. Right. I take it under the board's rationale there would still be an entitlement to look at the entire agreement. I think Your Honor is right unless there had been some discussions between them where Dred Sapp had shown and the union had agreed that these provisions that were transferred over were all related to bargaining unit work, the scope of bargaining unit work. But that didn't happen here. I mean, this is a very fact-based finding. But I would agree with Your Honor if it was just that and nothing more, probably, of course, I can't presume to what the board would have decided, but it's likely under this rationale the board would have found the same. But getting back, the reason we're here, Your Honors, is simply because at no point did Dred Sapp offer to amend, modify, narrow its proposal. It had from the very beginning, from the day they sat down to discuss this issue, until VLJ issued his decision to say, okay, time out, we understand, you're nervous about this issue, why don't we just say we'll amend the proposal and we'll make it refer specifically to those few provisions that we've provided to you. Never at any point did Dred Sapp take the opportunity to do that. And you can't now say that it didn't understand what the union was asking for. It was clear from the very beginning. And so, Your Honors, I mean, I don't want to belabor this unless you have any other questions. Let me ask you, can you remind us again, what's the substantial evidence of relevance here? The substantial evidence of relevance is the fact that the union made a request, which it has to do, and that request was based on the fact that the proposal itself referred to the HSP in general, as a whole, without identifying any specific provisions within there that were related to bargaining unit work. And therefore, the union was left with signing a contract on the assumption that the provisions that Dred Sapp had provided to it were the only ones related to scope of work, but without knowing that for sure because it had never seen the whole contract. Unless you have any questions, Your Honors, we ask that the Board's order be in force. Thank you. Mr. Simon. Thank you, Your Honors. A couple of short points. First, the proposal we made on direct product lines did specifically reference those provisions provided generally. It didn't identify the exhibit or the section number, but it said provisions describing work and its product or services provided pursuant to the Home Service Agreement. That is specific. That's not a wholesale incorporation of the document. And moreover, it's an unreasonable reading to presume it did. Excuse me. Where we see that passage. If you look at joint exhibit J.A. 83. It says. So the first sentence, in the event that I got the right one here, in the event the employer is engaged with respect, etc. Yes. It's November 4. Other than those provided pursuant to its H.S.P. agreement with Direct TV. Such work should not be deemed part of the network. How do I know as a union what that is? Well, the union asked for the H.S.P. agreement. We provided pages from the H.S.P. agreement that define the work. How are they to know that? Well, yeah. I've got to see the whole agreement because you're telling me what's relevant. What is relevant to this passage? I'd like to make that judgment for myself. Well, one once we provided the the particular pages and the first page said direct SAS engaged to provide service and maintenance work to direct TV on its satellite services. And that opening statement cross-referenced the exhibits. Exhibit 181 and 182, which provided a list of the types of type of specific tasks and services. I see there's another list somewhere else. It says notwithstanding the first piece under certain circumstances. The interesting thing, Your Honor, is that the union at no point in time said I don't understand this. Is there anything else? We don't know if there's anything else. We never had an opportunity to even respond to that because all the union kept saying throughout, at least until May, was we want the document because we want the document. And then when you get to May. Well, we want the document. But in context, that means we want the document because you referred to the document. Well, but that's a very general statement, especially when we've given a specific provisions. And now the union wants to say we need more. I think it was incumbent on the union to say this is why we need more. Now, maybe it would have been because we don't understand the proposal. Of course, then the question is, why did they make their own proposal that incorporates exactly the same language? Because that makes no sense at all in the context of bargaining. No party. That can't bear on relevance at the earlier time. Well, I think, well, what we're saying is we provided the relevant information when asked for it. Again, the question, and we agree that the definition of unit work was relevant. But that doesn't, that's not a concession that pricing, ADR provisions, everything else that goes into a typical commercial agreement becomes relevant. And so the union never gave us, explained why it needed those additional provisions. And, in fact, by nay, they stopped talking about bargaining unit work at all. So, and that's why we don't think there's any substantial evidence to support the board's decision. Thank you very much. Excuse me. Oh, I'm sorry. Excuse me. Thank you, Your Honor. Thank you. Excuse me, Mr. Carter. Sorry about that. Well, I've been identified, Your Honors. My name is Arthur Carter. I'm here on behalf of DIRECTV. The HSP agreement is a commercial contract between DIRECTSAT and DIRECTV, and it contains DIRECTV's confidential business information relating to pricing formulas and practices, business practices, quality standards, incentive structures, and it contains links to confidential information held by DIRECTV as well as DIRECTV's parent, AT&T. The fact of the matter is the board assumed that the HSP did contain confidential information. After learning that the board had ordered the respondent, in this case, to produce a full unredacted copy of the HSP, DTV filed a motion to intervene, to reopen the record in order to protect against disclosure of that confidential information. When was the first time that you learned that the HSPA was at issue in this case? The first time there was notice was after the board's order issued in March of 18. Notice of that point, you had noticed that the board had issued a decision. That is correct, Your Honor. I think the question was somewhat different. Yeah, when was the first time you learned it was an issue? The first time that it was learned that it was an issue, but it was a very incohate issue, was in November or December of 2016 when DIRECTSAT had a discussion with representatives of DIRECTV saying that they were endeavoring to resolve an unfair labor practice charge, and they discussed producing a redacted copy of the HSP. And that is the first and only notice that DIRECTV had that the HSP was an issue or that it would be required to take some action, such as seeking to intervene. What should have happened in this case? I'm sorry, Your Honor. I didn't hear quite what you said. What should have happened? Had things gone the way they should have, what would it have looked like? Well, hindsight is always wonderful, but what should have happened is either DIRECTV would have received notice that there was a proceeding involved and that there was an issue of the entire HSP being disclosed, so it could then have intervened at that time, or it could have urged DIRECTSAT to try to interpose a confidentiality objection. So DIRECTSAT dropped the ball. Well, they did not interpose a confidentiality objection. And they didn't keep you abreast of the contract. That is correct, Your Honor. They had a contractual obligation to do. That is correct, and they did not fulfill that contractual obligation. And that breach is an inferable breach of the contract. That is correct. So they had every incentive to do so and didn't do so. Well, I can't ascertain what their motives were or why they did not. Say again. All I said is they had every incentive because their business is at stake. Is there any business other than what is provided in the contract between the two companies? I don't know, Your Honor. I mean, their business is, if not wholly, at least in some part, servicing your company. At least with respect to this matter, that is the case. But I just don't know what the record is in terms of their business. Okay, fair enough. Yeah, but in terms of their incentives, one would have thought there would have been notice, but the reality was there was no notice. Right, right. Nor was there any inquiry from your end. The DIRECTV thought that the matter had been resolved because the last communication they had with DIRECTSAT was the matter was. . . I understand. You drew the inference from silence. That is correct, Your Honor. Not exactly a diligent response. Well, perhaps not diligent with the benefit of hindsight, but it appeared because the only thing that was in play was that there had been an effort to resolve an unfair labor practice charge. But a charge is a very preliminary part of the process. As the Board's own stats indicate, most charges are either more than half or either withdrawn or resolved. But you knew that charge involved the HSPA, right? Only in generalized terms. I'm sorry, did you know it involved the HSPA or not? Well, necessarily because there was a discussion of providing a redacted version of the HSPA. Okay, so you knew the nature of it was the extent of the production of the HSPA. So why isn't that sufficient notice to you that you ought to get involved in this? Well, consider context. The first thing is that would then mean that DIRECTV would have an obligation to monitor the bargaining of its contractors, to monitor the legal proceedings that its contractors were involved in, and instead it relied on the possibility that its contractor would inform it of the particularized issues involving the HSP. It certainly was not reasonably unnoticed that it would be required to intervene, and it was not unnoticed that DirectSAT would not interpose what would seem to be an obvious objection to the disclosure of the information, namely that it contained confidential information. It certainly was not unnoticed that the Board would issue, when it finally got the case, an order requiring disclosure of the entire agreement. It sounds like you might have a claim against DirectSAT, but in terms of the Board's conclusion as to whether you should be allowed to intervene after a period of time in which you are on notice that the HSPA was in issue and its disclosure could be a remedy, I'm not sure about that. Do you disagree that the Board says, and this is at J.A. 298, I guess, let's see, DirectTV admits that as early as November or December 2016, it discussed with the respondent the possibility that the latter would produce information contained in the HSP in order to resolve a Board charge. That's acknowledged. That's admitted. The question is what inferences you draw from that communication and whether you can extrapolate from that communication this entire process that played out before the NLRB. And our argument is that it's not reasonable to do that, and what the Labor Board has done is they've elevated that timeliness concern, essentially to overcome the confidentiality interest that DirectTV seeks to protect. They've made that the dominant consideration rather than a consideration of the nature of the motion to intervene in the first place, the purpose of the motion to intervene, and what impact it would have on the present parties to the case and what prejudice it would involve. It's interesting to contrast the position of the courts in the Rule 24 setting and what this court has even said in the Rule 24 setting, when you're evaluating timeliness of a motion to intervene, it's a broader consideration than just how long has the case been around. Rather, there's a totality of circumstances. Is that our standard here, the Rule 24? It's not the standard. No, it's not. No, Your Honor, the Board does not abide by Rule 24, but what Rule 24 does is provides a thoughtful body of law where courts have addressed these kinds of issues and a set of standards courts have considered in determining whether motions to intervene should be granted. The overarching point for DirectTV is it has a confidentiality interest in the information in the HSP, and there is no way it can protect against disclosure of that information. In the Rule 24 setting, it's very likely that it would have been able to obtain relief had the forum been different. Well, you anticipated this and dealt with it in a very thorough way in the relationship between the two companies, in the agreement between the two companies. Well, we did anticipate it, Your Honor, but two things are required for the agreement to actually be effective. One is notice from DirectSAT about an inquiry request or demand by a governmental authority to provide the HSP or confidential information. Well, that's what you got in November. Well, the question is what was received in November, and it was an incohate preliminary indication that there was some dealing with the NLRB. Right, right. On the Rule 24, did you have a case? I don't think Boeing was one. Is there a case, a board case, in which a post-decisional motion to intervene was granted for any purpose other than taking an appeal? Other than taking an appeal, yes, Your Honor, and there are cases to that effect cited in our brief, and those cases are referred to in the board's Boeing decision. Yeah, I thought they were not all for purposes of taking an appeal? They were for purposes of intervening to protect an interest that the existing parties could not protect. By appealing? Not necessarily, Your Honor. One of those was a successor case. Was there anyone that reopened the record? Your Honor, I don't know the answer to that question, and I have eight seconds to answer. Actually, it looks like I have 17 seconds. No, that means you're 17 seconds over. Oh, my apologies, Your Honor. No, that's fine. Thank you. Your Honor, could you address that question? Sure, and the answer would also be I'm not quite sure, but there are cases in which, indeed, as the board discussed in Boeing, where after a judgment it agreed to allow intervention. From the context, I think it may be possible that the record was then reopened because there were issues of fact. One was, as Mr. Carter said, there was an issue of a successor employer. A successor employer was not aware of the proceeding, the ULP proceeding, and therefore wanted to intervene to ensure that it was not on the hook as a successor. That would probably require reopening the record to determine the successorship, and it's possible the board in that case allowed that. But what the board made clear in that case, and in all the cases surveyed in Boeing, was that that party's interests were not and could not have been adequately represented by the existing parties to the ULP case before the board. And in this case, the board found, in addition and as an alternative to the untimeliness finding, that DirecTSat was fully capable of adequately representing DirecTV's interests because it was standing in its shoes and had all of the same defenses that DirecTV would have raised. I'd like to address a couple points that Mr. Carter made. The first is about whether DirecTV was on notice or not. It's interesting. As I was coming here, I realized that there was probably some problem with Mr. Seller's affidavit. Mr. Seller says that the first conversations occurred in November, December 2016, and that that was because DirecTSat had to resolve this issue. In fact, DirecTSat provided the excerpt of the HSP in December 2015. So I don't know. Either DirecTSat provided those documents without discussing it with DirecTV, which I find highly unlikely, or DirecTV knew actually a year before already that there was a charge going on and a board proceeding. As to that point, we've made clear in our brief that a charge is a board proceeding, and DirecTV clearly knew that. The whole point of Article 314D of the HSP is to protect the confidentiality of the HSP. Article 314 assumes that the confidentiality of the HSP is at risk when an information request is made pursuant to the National Labor Relations Act. In this case, we know DirecTSat informed DirecTV that a union had made a request for the HSP. DirecTV cannot now say that it somehow did not know that the confidentiality of the HSP was at risk, given that it knew that request was made. And I wanted to make a point as to timeliness. Neither Mr. Carter nor myself have been able, in our 70 pages of briefs, to find a single case where this Court granted a post-judgment motion to intervene, and the party was seeking to reopen the record and re-litigate a case. Not only that, but even less when that party was already, when there was an existing party at the underlying proceeding who was in a position of that party's interest. That simply has not been found. In fact, in Amador, this Court said that basically the closer you get to a final judgment or to a very complex trial, the higher the prejudice for the existing parties to allow somebody to intervene. In this case, it was after a final decision. The only thing remaining was this proceeding right here. What has been the prejudice? Well, the prejudice, Your Honor, it would be the same as this Court found in Amador. reopening the record, a new ALJ decision, a new board decision, a new enforcement proceeding. But all on an issue that has not been raised. All on an issue that has not been raised, but that could have been raised by a party that was there, and a party that was in discussions with the party now seeking to assert that issue. Ordinarily, I think prejudice refers not to the necessity to litigate the matter, but rather passage of time, something that bears on the actual real world outside the board. And that's why I was saying that in this case, the prejudice to the existing parties would be that we would have to go back to the ALJ, reopen the record. This is Directivison saying that's what they want to do. There would have to be a new ALJD, a new board decision, and we would be, who knows, it may take a year, it may take two years. So the prejudice to the existing parties is very real. If you don't have any other questions, then we ask that the board's order be enforced and that the directivist petition be denied. Thank you very much. Mr. Crockett, we'll give you back two minutes. Thank you, Your Honor. For rebuttal. That is appreciated. Let me first make note, in view of the question about post-judgment reopening of the record, the board's order is not a judgment. Those board orders are not self-executing. It's this court that has the authority to turn that into a judgment that can be enforced.  Which is to say that further delay would prevent the union from that much longer from having potential access. That's potentially the case, Your Honor. But where there is an interest deserving of protection, such as the preservation of confidentiality, one of the considerations that should be taken into account is the extent to which granting the motion to intervene would prejudice the existing parties. And while, in fact, it might prejudice the union because there's further delay, let's be clear about how narrow this issue is. It relates to the HSP, and it relates to the confidential information contained in the HSP, and it is conventional in labor relations where there's a clash between what needs to be disclosed that an accommodative process takes place. Had DIRECTV been allowed to intervene, it could quickly have engaged in that accommodative process, perhaps resolved it, or the board could have either remanded it to the ALJ or itself considered it and taken an in-camera review of the document in question. That's not an unheard-of process to consider whether something's confidential or not. And while to be sure there would be additional delay, I'm not certain how significant it would be and how much prejudice there would be. Is there now a collective bargaining agreement? I have no idea, Your Honor. In the few seconds I have remaining, I'd like to conclude with an emphasis on Detroit Edison. Once it's determined that the information is confidential, the necessary conclusion to draw from Detroit Edison is that the board was required not to deserve that interest. And in this case, it did deserve that interest by not taking into account DIRECTV's confidentiality interest, instead resolving the issue on collateral grounds. Thank you. Thank you very much. Now the case is submitted. Thank you.
judges: Griffith, Srinivasan, Ginsburg